

# Missouri Court of Appeals

### Southern District

#### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD36276 |
| | ) | |
| vs. | ) | **Filed: November 16, 2020** |
| | ) | |
| RODRIGO J. DIAZ, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

### Honorable Judge James K. Journey

### <u>AFFIRMED</u>

Rodrigo J. Diaz ("Defendant") appeals from his conviction of first-degree felony drug trafficking following a jury trial. *See* § 579.065.[1] Defendant's sole point on appeal challenges the sufficiency of the evidence supporting his conviction. Finding no merit to Defendant's argument, we affirm.

### Standard of Review

In reviewing a claim for sufficiency of the evidence, the appellate court's analysis is limited to "whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." ***State v. Naylor***, 510 S.W.3d 855, 859 (Mo. banc 2017) (quoting ***State v. Letica***, 356 S.W.3d 157, 166 (Mo. banc 2011)). This Court

---

[1] All statutory references are to RSMo. (2016).

does not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict in determining whether evidence was sufficient to support a conviction and to withstand a motion for judgment of acquittal. *Id.* at 858-59. This Court does not act as a "super juror" with veto powers but gives deference to the trier of fact when reviewing the sufficiency of the evidence supporting a criminal conviction. *Id.* at 859.

### Factual and Procedural History

The evidence is viewed in the light most favorable to the jury's verdict. *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016). On June 8, 2018, shortly after midnight, Henry County Sheriff's Office Narcotics Detective Devon Kauffman[2] ("Deputy Kauffman") stopped a vehicle for expired license plate registration. Defendant was a passenger in the front seat of the vehicle. Deputy Kauffman observed Defendant was nervous, had no identification on his person, and had a torch lighter in his lap. Deputy Kauffman testified he knew torch lighters were "commonly used to smoke or use methamphetamine." He asked Defendant to step out of the car and observed a green glass pipe with three bulbs inside the pocket of the passenger door. The pipe contained both white and burnt residue. Defendant admitted he knew the pipe was used for smoking methamphetamine and that he had used methamphetamine two days earlier. Deputy Kauffman asked him if he had anything else illegal on him and Defendant said he did not.

After Defendant was transported to the St. Clair County Jail, Corrections Officer Cole Stevens ("Officer Stevens") booked Defendant into the jail. As Defendant changed into his jail uniform, Officer Stevens observed "a noticeable oddly-shaped bulge" on the front left side of Defendant's underwear. When Defendant removed his underwear, a large plastic bag

---

[2] On the night of the incident, Deputy Kauffman was employed by the St. Clair County Sheriff's Office. On the date of trial, he was employed as a Narcotics Detective with the Henry County Sheriff's Office.

2

containing four smaller plastic bags fell to the floor. Each smaller bag contained a crystal substance.

Deputy Kauffman retrieved the bags which were subsequently taken to a crime lab for drug testing. The contents of the four bags were identified as methamphetamine with a total weight of 107.49 grams.

Defendant was charged with first-degree drug trafficking for:

knowingly possess[ing] 107 grams of methamphetamine and such conduct was a substantial step toward the commission of, and was done for the purpose of committing, the offense of trafficking in the first degree, by attempting to distribute, deliver or sell 90 grams or more of any material, compound or mixture containing any quantity of methamphetamine, a controlled substance.

Defendant did not testify at his jury trial. Defendant was found guilty of trafficking drugs in the first degree. He filed a motion for new trial which was overruled, and was sentenced to 15 years in the Missouri Department of Corrections. This appeal timely follows.[3]

### Analysis

Defendant challenges the sufficiency of the evidence supporting his conviction arguing the jury could not reasonably infer Defendant intended to deliver or distribute the methamphetamine found in his possession where the "only fact presented by the State to prove this element of the offense" was that Defendant possessed 107 grams of methamphetamine.

Section 579.065 provides in relevant part:

A person commits the offense of trafficking drugs in the first degree if . . . such person knowingly distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce: [n]inety grams or more of any material, compound, mixture, or preparation containing any quantity of . . . methamphetamine[.]

§ 579.065.1; 579.065.3(8).

---

[3] Although a challenge to the sufficiency of the evidence need not be raised in a motion for new trial to be preserved for appellate review, *see* Rule 29.11(d), Missouri Court Rules (2020), Defendant's claim was raised in his motion for new trial. While Defendant's point alleges the "trial court erred in *sentencing* [Defendant]" (emphasis added), we interpret his point as challenging the sufficiency of the evidence to support Defendant's conviction *and* sentence.

Section 562.012 provides, in pertinent part:

> Guilt for an offense may be based upon an attempt to commit an offense if, with the purpose of committing the offense, a person performs any act which is a substantial step towards the commission of the offense. A **"substantial step"** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

§ 562.012.1. *See **State v. Withrow***, 8 S.W.3d 75, 80 (Mo. banc 1999).

Here, the evidence was sufficient for a reasonable juror to find Defendant took one or more substantial steps toward the commission of the offense of trafficking based on the amount of methamphetamine in his possession and how it was packaged.

Deputy Kauffman had conducted approximately 130 drug arrests, and, along with his regular law enforcement training, had received at least 40 hours of additional specialized drug training which included training on detecting people using drugs, working with drug informants, concealment of drugs in vehicles, and trafficking in drugs. He also worked as a reserve officer with the Mid-Missouri Drug Task Force conducting investigations into drug activities.

Deputy Kauffman testified that 107 grams of methamphetamine was approximately three-and-one-half ounces of methamphetamine. Based on his training and experience, around an eighth to a quarter of a gram was generally used for one hit of methamphetamine, and one hit lasted for half a day to a full day. He further testified that using the measurement of one eighth of a gram per hit, based on the 107 grams found, would equal approximately 856 hits of methamphetamine, far more than was usual for personal use. He also testified that in St. Clair County a single gram of methamphetamine sold for "40-60" dollars average. Using $50 per gram as an average figure, he estimated the value of Defendant's methamphetamine was approximately $5,350. Based on Deputy Kauffman's testimony, the jury could draw the reasonable conclusion that having 107 grams of methamphetamine in his possession was strongly corroborative of Defendant's purpose to distribute or deliver methamphetamine to others. *See, e.g., **State v. Marr***, 499 S.W.3d 367, 371 n.3 (Mo. App. W.D. 2016) (stating

4

officer's testimony at trial that amount of methamphetamine typically associated with "mere personal use was a gram or less"); ***State v. Williams***, 118 S.W.3d 308, 310 (Mo. App. S.D. 2003) (noting officer's testimony that amounts of methamphetamine "less than three grams were typically personal user quantities").

In addition, the methamphetamine was contained in one large plastic bag hidden on his person which had been broken down into four separate smaller bags. Evidence of divided bags supports the inference that a controlled substance is packaged for distribution. *See **State v. Duff***, 281 S.W.3d 320, 328 (Mo. App. W.D. 2009) (noting individually-wrapped bags of marijuana supported the reasonable inference the bags were intended for distribution).[4]

In this case, there is evidence Defendant possessed 107 grams of methamphetamine worth approximately $5,350 packaged in four individual bags consisting of a total of approximately "856 hits[.]" There was sufficient evidence for a reasonable juror to find Defendant committed a substantial step toward the distribution or delivery of over 90 grams of methamphetamine.

Defendant's point is denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[4] To bolster his argument that the evidence was not sufficient to support his conviction, Defendant attempts to compare the amount of methamphetamine with the amounts of other types of controlled substances. This argument is unavailing because, as section 579.065 provides, the amount of a controlled substance necessary to establish a conviction for trafficking depends on the drug involved. *Cf.* § 579.065.1(4) (for mixture or substance containing lysergic acid diethylamide (LSD), the prohibited amount is "[m]ore than five hundred milligrams but less than one gram") *with* § 579.065.1(7) (for mixture or substance containing marijuana, the prohibited amount is "[m]ore than thirty kilograms but less than one hundred kilograms"). Section 579.065.3(8) specifically refers to possession of more than 90 grams of methamphetamine as a class A felony.